UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 09-101 (JNE/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| ROLAND CHAPAYE POUR, | |
| Defendant. | |

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon Roland Chapaye Pour's Motion to Suppress Confessions or Statements Made in the Nature of Confessions [Docket No. 15]. James Lackner, Assistant United States Attorneys, appeared on behalf of the United States of America; Daniel Schermer, Esq. appeared on behalf of defendant Roland Chapaye Pour, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing and post-hearing submissions and the testimony of Special Agent Marcus Lane, it is recommended that Roland Chapaye Pour's Motion to Suppress Confessions or Statements Made in the Nature of Confessions [Docket No. 15] be DENIED.

I.  **FACTUAL BACKGROUND**

Defendant is charged with 11 counts of making claims for a false refund on taxes in violation of 18 U.S.C. § 287.

At the hearing on the motions, IRS Special Agent Marcus Lane testified as follows: He was referred by the IRS Fraud Detection Center to a selection of approximately 69 federal tax returns for investigation. All of the returns shared in common the same type of the fraud: the reported wages and withholding on the returns had been altered on all of the returns; and the withholding amounts had been inflated to make it seem as though more tax had been taken out than really was withheld, which resulted in a larger tax refund than would be otherwise permissible. Further, all of the returns were filed electronically and none had any indication on them that they were completed by a preparer. Of the 69 returns, 58 of them shared the same computer IP address.

Agent Lane interviewed 19 taxpayers whose returns had been flagged, and concluded that defendant had prepared their tax returns. Agent Lane then created two photo spreads, both of which depicted defendant among other individuals. Agent Lane showed the spreads to 15 people. Twelve of the 15 individuals identified defendant as the person who had prepared their tax returns. Of the 15 people who were showed the photo spread, nine appear as victims in the Indictment.

Agent Lane subsequently interviewed defendant on September 28, 2005, and on November 30, 2005. It is these two interviews that are the subject matter of defendant's motion to suppress statements.

On September 28, 2005, Agent Lane and another IRS Agent, Special Agent Baumgardner went to the parking lot of defendant's apartment building, and waited until he arrived, parked and walked to the entrance. At that point, the agents approached defendant. Agent Baumgardner introduced herself, displayed her credentials and asked

2

defendant if they could ask him a few questions. Defendant agreed. Agent Lane also introduced himself and displayed his credentials. The agents went with defendant to his apartment.

At the beginning of the interview, Agent Lane explained the nature of the investigation regarding a group of fraudulent tax returns and stated that he had some indications that defendant was involved. Agent Lane then began asking questions about defendant's involvement. Defendant was willing to answer those questions. Agent Lane did not say whether defendant was being interviewed as a potential witness or as a defendant. Prior to interviewing defendant, the agents did not read to him his Miranda rights or the non-custodial rights set forth in the IRS Manual or directly tell defendant that he was the target of the investigation.

All of the questioning took place in defendant's living room. Defendant was not restrained and was free to move about. The agents did not intend to arrest defendant, and made no statements regarding whether defendant was under arrest. The agents were casually dressed, and did not display their firearms. The agents made no threats or promises to defendant, did not raise their voices, asked straightforward questions, and employed no deceptive strategies. The interview lasted about 45 minutes.

The tone of the interview was conversational; defendant was concerned due to the nature of the questioning but did not appear overly anxious. At no time did defendant request the presence of an attorney or say that he did not wish to answer the agents' questions. At the end of the interview, defendant told Agent Lane that he was concerned that he would be in trouble if what he had stated during the interview was not

3

corroborated.  He asked if he needed an attorney.  Agent Lane told defendant that he could not advise him on whether to seek legal counsel.

Defendant's question regarding an attorney reminded Agent Lane that he had forgotten to read defendant a notice of non-custodial right pursuant to IRS policy which requires the reading of these rights prior to interviewing the target of an investigation.  Agent Lane told defendant he had forgotten to read the rights to him and did so at that time.  Defendant asked if Agent Lane had violated those rights, and Agent Lane said he had not because defendant was not in custody, and it was just something Agent Lane did as a matter of policy.  Agent Lane then asked defendant whether his knowledge of those rights at the beginning of the interview would have changed defendant's willingness to talk to the agents, and defendant replied that it might have.  Agent Lane did not directly state that defendant was the target of the investigation until after the interview, and after the discussion regarding defendant's non-custodial rights.

On cross-examination, Agent Lane testified that the non-custodial warning he gave to defendant at the end of the interview is contained in the IRS Manual and the Manual states that agents are required to give the warning to a target prior to an interview.[1]  On the other hand, if Agent Lane had been interviewing a return preparer who was not a target of an investigation, he would not give the warning.

---

[1]  Defendant provided to the Court a copy of the pertinent pages of the IRS Manual with his post-hearing brief.  See Def. Post-Hearing Mem., Ex. 1.  The relevant sections of this Manual provide as follows:

> **9.4.5.11.3.1  (02-01-2005)**
> **Informing of Constitutional Rights in Non-Custodial Interviews**
>
> 1. The special agent will advise the individual of his/her constitutional rights during non-custodial interviews when the individual is a subject of an

Subsequent to the interview, Agent Lane prepared a memorandum summarizing the information provided by defendant.[2] The memorandum stated that defendant denied preparing income tax returns for others (¶ 4); admitted that he had taken a tax preparation courses at H&R Block, but never completed the training (¶ 4); admitted that

---

> investigation, a corporate officer or employee who appears to be implicated in an alleged wrongdoing involving a corporation under investigation, or when a witness' statement would incriminate the witness.
>
> 2. The special agent will not use trickery, misrepresentation, or deception to obtain any evidence or information. Moreover, the special agent will not use language that could be interpreted as a promise of immunity or settlement of the subject's investigation, or that might be viewed as intimidation or a threat.
>
> 3. To defend against an attack on the admissibility of any statement or documentary evidence furnished by a subject under investigation, the special agent will always inform the subject of his/her constitutional rights at the beginning of a formal question and answer interview, even if the subject had previously been advised.
>
> 4. Failure to give subjects the constitutional warnings prescribed by Internal Revenue procedures has resulted in the exclusion of evidence obtained from the subjects. See *U.S. v. Leahey* and *U.S. v. Heffner*.
>
> **9.4.5.11.3.1.1 (02-01-2005)**
> **Subject of Investigation**
> *****
> 2. Advise the subject of the investigation as follows: "In connection with my investigation of your tax liability (or other matter), I would like to ask you some questions. However, first I advise you that under the Fifth Amendment to the Constitution of the United States, I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of an attorney before responding. Do you understand these rights?"
> *****
> 6. During subsequent contacts with the subject, the subject should be advised of his/her constitutional rights before questioning.

---

[2] The Government submitted the memorandum with its post-hearing brief. See Memorandum of Interview attached to Gov't Post-Hearing Mem [Docket No. 32-2].

5

Reliable Tax Service was owned by Sam Willie, the husband of defendant's cousin (¶ 6); admitted working only as a recruiter for Reliable Tax Service (¶¶ 8, 11); admitted that to get referrals, he distributed his business cards to people or left them on cars in parking lots (¶ 8); denied knowing which of his referrals actually did business with Reliable Tax Service (¶ 8); denied supplying any information from any customers to Willie and stated that his only contact with customers was to direct them to call Willie if they called defendant in response to the business card he had given them (¶¶ 8, 11); denied lending his computer to Willie and said he had never given Willie his email account or password (¶ 12); denied knowing the names of any people who had filed fraudulent tax returns (except his mother) and were linked to Reliable Tax Service (¶¶ 13, 14); and denied any knowledge that false refunds were being claimed (¶ 15). See Memorandum of Interview attached to Gov't Post-Hearing Mem.

On November 30, 2005, Agent Lane called defendant and asked to speak with him again, and defendant agreed. They set up a time to meet at defendant's apartment. At the arranged time, Agent Lane and Agent Nye went to defendant's apartment. Defendant was not there, so Agent Lane called defendant on his cell phone and defendant said he was stuck in traffic. The agents waited in their cars in the parking lot. Defendant called to say he was home, met the agents at the entrance to his apartment building, and took them to the living room of his apartment.

Prior to starting the interview, Agent Lane told defendant he was not under arrest, reminded defendant that the non-custodial rights read to him at the end of the first interview were still in effect, and stated that defendant could stop the interview at any time. Defendant stated that he understood and that he was willing to talk.

6

During the interview, defendant was not restrained, was free to move around his apartment, and the agents did not display their firearms. At one point during the interview, defendant offered to let Agent Lane take defendant's laptop. Neither agent accompanied defendant as he got up to retrieve it. However, when Agent Lane later laid out the evidence against defendant and told defendant he did not believe his story, defendant became irritated and told Agent Lane he wanted his computer back, and Agent Lane gave it back to him.

The interview lasted approximately 50 minutes, was conversational in tone, and the agents made no threats or promises to defendant. The agents were civil and did not raise their voices. The questions were straightforward, and defendant readily answered the questions. Agent Lane did not tell defendant that he could go to jail or could be deported, and was aware that defendant was a United States citizen. Defendant was not arrested at the end of the interview.

## II. ANALYSIS

Defendant has conceded that the interviews were non-custodial, and therefore, no Miranda warnings were required. Def. Post-Hearing Mem., p. 3. Defendant also acknowledged that Agent Lane's failure to give him the non-custodial warnings contained in the IRS Manual was not per se a constitutional violation. Id. Instead, defendant contended that the statements he made during the first interview were not voluntary because he was not supplied with a non-custodial rights warning as required by the IRS Manual, and because he was not informed that he was the target of the IRS's investigation. On this basis, defendant argued that his statements from the first interview should be suppressed pursuant to 18 U.S.C. § 3501, and any statements from

7

the second interview should be likewise suppressed as fruits of the poisonous tree. Id., pp. 3-5.

In response, the Government argued that 18 U.S.C. § 3501 was inapplicable to his initial interview, and that Agent Lane's failure to advise the defendant of his non-custodial rights or inform defendant that he was a target did not render his statements in this interview involuntary under the Fifth Amendment. Gov't Post-Hearing Mem., pp. 3, 6-11. The Government also maintained that even if the first interview was suppressed, the second interview should not be quashed based on the fruits of the poisonous tree doctrine. Id., pp. 11- 12.

### A. **September 28, 2005 Interview**

The relevant portions of § 3501 provides as follows:

(a) In any criminal prosecution brought by the United States . . . a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. . . .

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including . . . . (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.
***

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person

8

who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

The Government submitted that § 3501 has no bearing on the September 28, 2005 interview for two reasons: first, because defendant was not under arrest or detention at the time the interview was given; and second, because defendant did not confess to anything during this interview. See Gov't Post-Hearing Mem., pp. 6-7. In light of the plain language of the statute and relevant case law, the Court agrees. See §§ 3501(d), (e); United States v. Broeske, 178 F.3d 887, 889 (7th Cir. 1999) ("§ 3501(d) explicitly excludes statements made voluntarily…absent arrest or other detention."); United States v. Valdez, 16 F.3d 1324, 1332 (2d Cir. 1994) (§ 3501 governs the admissibility of confessions, and its applicability therefore depends on whether statements can be characterized as a confession); United States v. Torres, 685 F.2d 921, 926 (5th Cir. 1982) ("Because the statement was not inculpatory, it was not a confession under 18 U.S.C. s 3501(e)."). Defendant was not under arrest or detained at the time he submitted to the interview on September 28, 2005, and by his own admission, the interview was non-custodial. Further, neither the testimony at the hearing nor the memorandum summarizing defendant's interview suggested that defendant said anything that amounted to a confession or an inculpatory statement. Accordingly, to the extent that defendant's motion is premised on 18 U.S.C. § 3501, it must fail.

Further, even if defendant had contended (which he did not) that his statements were involuntary under the Fifth Amendment because of the agents' failure to advise

9

him prior to his interview of the non-custodial rights and that he was the target of their investigation, such an argument finds no support under the law or the facts of this case.

"In considering whether a [statement] was voluntary, the determinative question is whether the [statement] was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998) (citing Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (citation omitted)). "In making this determination, courts look at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure." Id. (citing United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir.1990), cert. denied, 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991)). In short, coercive police activity is a necessary predicate to the finding that a statement was made involuntarily. See Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986).[3]

---

[3] In fact, as the Seventh Circuit observed:

> Trickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Holland v. McGinnis, 963 F.2d 1044, 1051 (7th Cir.1992); United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir.1990) ("far from making the police a fiduciary of the suspect, the law permits the police to pressure and cajole, conceal material facts, and actively mislead"); United States v. Byram, 145 F.3d 405, 408 (1st Cir.1998) ("trickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect. While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations"). And these were custodial cases.

United States v. Kontny, 238 F.3d 815, 817 (7th Cir. 2001).

In assessing the voluntariness standard and ultimately whether the Government has violated a person's due process rights in the course of taking his statement, it is important to remember that "the Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause. The Fifth Amendment is implicated only when a federal agent's conduct actually compels a person to speak against his will." United States v. Rutherford, 555 F.3d 190, 192 (6th Cir. 2009). As such, where the Fifth Amendment did not require the IRS to give defendant his Miranda rights prior to a non-custodial interview, the IRS's failure to advise him of his non-custodial rights as prescribed by the IRS Manual "cannot of *its own force* violate the Due Process Clause, and to find otherwise would radically overstate the protections afforded by the Fifth Amendment." Id. (emphasis in original). Rather, "[p]roof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive." Beckwith v. United States, 425 U.S. 341, 348 (1976) (citations omitted). In sum, in evaluating the impact of the IRS agents' failure to apprise defendant of his non-custodial rights on the voluntariness of his September 28, 2005 statement, this Court finds, as did the Rutherford court, that "whether the agents were acting deliberately or merely negligently, the failure [to follow the IRS Manual], standing alone, does not demonstrate a lack of voluntariness in [defendant's] statements, absent evidence that [he was] in fact compelled to talk by the government's affirmative misrepresentations." 555 F.3d at 195.

Here, although defendant stated to Agent Lane that he may not have been willing to speak with the agents had he been informed of his non-custodial rights before the interview began, there is nothing in the record to show that the IRS agents made any

misrepresentations to defendant to compel him to talk, much less that he knew that the IRS Manual obliged the agents to read to defendant the non-custodial rights or that he relied on such knowledge when he agreed to be interviewed. If anything, defendant's willingness to be interviewed a second time by Agent Lane after being reminded of these rights, indicates to this Court that the failure to apprise him of them did not affect the voluntariness of his first interview. Defendant offered nothing to demonstrate that Agent Lane's failure to inform him of his non-custodial rights contributed to his willingness to be interviewed.

Regarding Agent Lane's failure to inform defendant that he was the target of an investigation, "[e]vidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes that: 1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights." United States v. Grunewald, 987 F.2d 531, 534 (8th Cir. 1992) (citing United States v. Meier, 607 F.2d 215, 217 (8th Cir. 1979); United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977)). See also Rutherford, 555 F.3d at 194 (quoting United States v. McKee, 192 F.3d 535, 542 (6th Cir. 1999) ("It is incumbent upon the defendant to show by clear and convincing evidence that 1) the revenue agent made affirmative misrepresentations in the course of her investigation, and 2) because of those misrepresentations, the defendant disclosed incriminating evidence to the prejudice of her constitutional rights.")).

In this case, the IRS did have firm indications of fraud by defendant – Agent Lane had interviewed 19 people who had fraudulent tax returns, all of whom stated that defendant prepared their returns. Furthermore, 12 people identified defendant from a photograph spread as the man who had prepared their returns. However, there is no evidence that the IRS intentionally (or even negligently) misled defendant into believing that he was not under criminal investigation. To the contrary, at the outset of the interview Agent Lane explained to defendant the nature of the investigation regarding a group of fraudulent tax returns that had been filed with the IRS and that he had some indications that defendant was involved in their preparation.

Additionally, there is no clear and convincing evidence before this Court to establish that the IRS's conduct resulted in prejudice to defendant's rights. There is neither testimony nor even argument by defendant that he would not have agreed to speak with the agents had they explicitly informed him that he was the target of their investigation prior to starting the first interview. The failure of the agents to expressly inform defendant that he was the target of their investigation does not, without more, constitute intentional deceit. See i.e. Grunewald, 987 F.2d at 534 ("the mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS."). The Court finds that, in the absence of any record of affirmative and intentional conduct by the agents to mislead defendant, the agents' failure to specifically inform defendant that he was the target of their investigation before the interview began did not render his statements to them involuntary.

As to the remaining circumstances surrounding defendant's interview, the Court finds that defendant's statement was voluntarily given. Defendant acquiesced to an interview in his own home. He was not restrained and was free to move about during the interview, which lasted approximately 45 minutes. The interviewing agents were casually dressed, did not display any firearms, and made no threats or promises to defendant. The agents did not raise their voices and asked straightforward questions. The tone of the interview was conversational, and at no time did defendant state that he did not want to talk. There is no evidence before the Court to indicate that defendant's will was overborne or that his capacity for self-determination was impaired, and there is no evidence that the agents deceived defendant in any way. Based on the totality of the circumstances, the Court finds that defendant's statements at the September 28, 2005 interview were voluntarily given.

### B. November 20, 2005 Statements

Defendant moved to suppress his statements from the November 30, 2005 interview solely on the basis that they constituted fruits of the poisonous tree from the September 28, 2005 interview. Def. Mem., p. 5. As this Court has concluded that the statements given by defendant during the September 28, 2005 interview were voluntary and validly obtained, defendant's fruit of the poisonous tree argument has no application, and his motion to suppress his November 30, 2005 statements should be denied.

### RECOMMENDATION

For the reasons set forth above, it is recommended that:

Roland Chapaye Pour's Motion to Suppress Confessions or Statements Made in the Nature of Confessions [Docket No. 15] be DENIED.

Dated: June 30, 2009

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 17, 2009**, a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.